**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| FINOVA Capital Corporation, | ) |
| | ) |
| Plaintiff, | )  No. CIV 02-1277-PHX RCB |
| | ) |
| Vs. | )  O R D E R |
| | ) |
| Richard A. Arledge, Inc., | ) |
| d/b/a Arledge Motor Co., | ) |
| et al., | ) |
| | ) |
| Defendant. | ) |

## I. Introduction

This case commenced on July 12, 2002, when Plaintiff Finova Capital Corporation ("Finova") filed its complaint. Compt. (doc. 1). The complaint alleged claims against Richard A. Arledge, Inc., et al. ("the Arledges"), arising out of a loan agreement between the parties.

On October 10, 2003, the Arledges filed an amended answer and counterclaim, as well as a third-party complaint (doc. 91). The third-party complaint was brought against Leucadia National Corporation ("Leucadia"). Id. Defendants filed a First Amended

1  Original Third-Party Complaint ("Third-Party Complaint") on May 10,
2  2004. (doc. 140).
3      On November 1, 2004, Third-Party Defendant Leucadia National
4  Corporation ("Leucadia") filed a motion for summary judgment in
5  this matter. Mot. (doc. 179). The Court granted Leucadia's motion
6  on March 18, 2005, (doc. 190), and denied the Arledges' motion for
7  reconsideration, (doc. 192), on April 26, 2005. Order (doc. 196).
8      After the Court's ruling on Leucadia's motion for summary
9  judgment, Leucadia filed a motion for entry of final judgement.
10 Mot. (doc. 191). This motion was fully briefed on May 11, 2005.
11 Reply (doc. 199). Having carefully considered the arguments
12 presented by the parties, the court now rules.
13 **II. Background Facts**
14     On December 14, 1995, the Arledges and Finova entered into a
15 Loan and Security Agreement, which was thereafter amended numerous
16 times. LSOF (doc. 180) at 2; ASOF (doc. 184) at 2.  The last such
17 amendment, entitled the "Tenth Amendment and Restated Schedule to
18 Loan and Security Agreement," was dated October 30, 2000
19 (hereinafter, the "Loan Agreement").  Id.  Leucadia was not a party
20 to the Loan Agreement, and was not involved with the negotiation of
21 the Initial Loan and Security Agreement or any of the subsequent
22 amendments. Id. All of the above listed agreements were executed
23 prior to Leucadia's involvement with Finova. Id.
24     In February 2001, Leucadia and Berkshire Hathaway, Inc. formed
25 a joint venture called Berkadia, L.L.C., which, in turn, agreed to
26 lend $6 billion to Finova. LSOF (doc. 180) at 3; ASOF (doc. 184) at
27 3. In connection with this loan, Finova entered into a ten-year
28 management services agreement with Leucadia ("the Management

Agreement"), pursuant to which Leucadia agreed to manage the operations of Finova in consideration of receiving a fixed annual management fee from Finova. Id. The Management Agreement provided that Leucadia was responsible for the "general management" of Finova beginning on August 21, 2001. LSOF (doc. 180) at 3-4; ASOF (doc. 184) at 3.

In their third-party complaint, the Arledges alleged that, since the execution of the Management Agreement, Leucadia "caused" Finova to eliminate new business development activities and "focus on managing and maximizing the value of Finova's existing portfolios." F. Amend. Third-Party Compt. (doc. 140) at 11. They further maintained that Leucadia caused Finova to "wrongfully" declare events of default so that Finova could foreclose on certain collateral and negotiate increased interest rates and fee structures with borrowers. Id.

In a letter dated May 7, 2002, Finova declared certain events of default resulting from Arledge Motor Company's alleged violation of the "Minimum Net Cash Flow Covenant" under the Loan Agreement. LSOF (doc. 180) at 2; ASOF (doc. 184) at 2. Thereafter, a dispute arose between the Arledges and Finova as to (a) whether such a violation had occurred, and (b) whether such violation could be cured by Arledge Motor Company, or should be waived by Finova. LSOF (doc. 180) at 2-3; ASOF (doc. 184) at 2. In light of this alleged event of default, Finova refused to fund a $36,000 loan advance request made by Arledge Motor Company. LSOF (doc. 180) at 3; ASOF (doc. 184) at 2.

The Arledges brought seven causes of action against Finova in their counterclaim, each related to the Loan Agreement: (1) breach

1  of contract; (2) declaratory judgment; (3) specific performance;
2  (4) fraud; (5) negligent misrepresentation; (6) exemplary damages;
3  and (7) wrongfully seeking temporary injunctive relief, which was
4  awarded to Finova by the court. S. Amend. Counterclaim (doc. 140).
5  The Arledges asserted these same seven claims against Leucadia,
6  "[b]ecause Finova and [Leucadia] were acting in concert at relevant
7  times[.]" Id. at ¶ 83. In a separate claim raised against Leucadia,
8  the Arledges alleged that Leucadia, through its management of
9  Finova, intentionally and willfully interfered with the business
10 relationship between Finova and the Arledges. F. Amend. Third-Party
11 Complaint (doc. 140).

**III.  Standard**

Federal Rule of Civil Procedure 54(b) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

In deciding whether entry of final judgment is appropriate, "[a] district court must first determine that it is dealing with a "final judgment," that is, a judgment that is "'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 7 (1980) (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436 (1956)). Then, the court must determine whether there is any just reason for delay. Wood v. GCC Bend, LLC, 422 F.3d 873, 878 (9th Cir. 2005).

It is left to the sound judicial discretion of

> the district court to determine the appropriate time when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised in the interest of sound judicial administration....Whether a final decision on a claim is ready for appeal is a different inquiry from the equities involved, for consideration of judicial administrative interests is necessary to assure that application of the Rule effectively preserves the historic federal policy against piecemeal appeals.

Id. (internal citations omitted). Although the Supreme Court has eschewed setting narrow guidelines for determining when there exists a just reason for delay, Curtiss-Wright sheds light on the factors that may inform the Court's decision. Id. at 878, n.2. Factors affecting this inquiry include whether the claims finally adjudicated were separate, distinct, and independent of any of the other claims or counterclaims involved, whether review of these adjudicated claims would not be mooted by any future developments in the case, and whether the nature of the claims was such that no appellate court would have to decide the same issues more than once, even if there were separate appeals. See Curtiss-Wright, 446 U.S. at 6; Wood, 422 F.3d at 878, n.2.

**IV. Analysis**

    **A. Final Judgment**

In their motion, Leucadia asserts that the "Court's order granting Leucadia's motion for summary judgment disposes of the entire case between the Arledges and Leucadia." Mot. (doc. 191) at 7. In contrast, the Arledges argue that they still have an active claim against Leucadia. Resp. (doc. 194) at 2. The Arledges assert that they pursued a claim of conspiracy against Leucadia that was not resolved by the Court's order granting summary judgment. Id.

In their Third-Party Complaint, the Arledges stated that

"[b]ecause Finova and [Leucadia] were acting in concert at relevant times, allegations and causes of action designated as against Finova are also alleged against [Leucadia]." (doc. 140) at ¶ 83. In a previous order, the Court analyzed this statement and found that, although "obscure," it was sufficient to include Leucadia as a defendant in the claims raised against Finova. Order (doc. 144) at 6. Therefore, the Arledges now argue that the statement, in combination with the Court's prior finding, indicates that "Leucadia can be liable if it conspired with FINOVA[.]" Id. at 3. The Arledges contend that Leucadia did not move for summary judgment on this conspiracy claim, thus leaving a remaining claim between the parties. Id.

The Court does not find that a claim of conspiracy currently exists between the Arledges and Leucadia. In its Order of May 26, 2004, the Court stated,

> Paragraph 82 specifically states that, "causes of actions (sic) designated as against Finova are also alleged against [Leucadia]." Supra. As a result, the court must construe the complaint, for purposes of this motion, to include Leucadia as a defendant in claims one through seven.

Order (doc. 144) at 6.[1] Thus, the Court concluded that the claims raised against Finova were also raised against Leucadia. In their motion for summary judgement, Leucadia moved "for summary judgment on all of the claims asserted against it in Defendants' Second

---

[1] In its order, the Court refers to "Paragraph 82" of the Arledges' First Amended Answer and Counterclaim; Third Party Complaint; And Jury Demand. (doc. 91). Paragraph 83 of Defendants' Second Amended Original Answer, Second Amended Original Counterclaim, and First Amended Original Third-Party Complaint, (doc. 140), contains language identical to that in Paragraph 82 in the Arledges' original third-party complaint.

- 6 -

1  Amended Original Counterclaim and First Amended Original Third-
2  Party Complaint[.]" Motion for Summ. Judg. (doc. 179) at 2.
3  Consequently, in light of the Court's order granting Leucadia's
4  motion for summary judgment, the Court concludes that no further
5  causes of action exist between the Arledges and Leucadia, and the
6  Court has rendered a "final judgment" in this matter.
7  **B. Just Reason for Delay**
8  Leucadia argues that the Arledges' claims against Leucadia are
9  separate, distinct, and independent of the claims and counterclaims
10 between Finova and the Arledges. Mot. (doc. 191) at 7. "Although
11 the Arledges alleged that Leucadia 'acted in concert with' Finova,
12 the issue before the Court on Leucadia's motion for summary
13 judgment and decided in the Court's Order was whether Leucadia
14 engaged in any conduct that would give rise to liability,
15 regardless of any alleged tortious conduct of Finova." Id.
16 Moreover, Leucadia asserts that the outcome of the case between
17 Finova and the Arledges will not affect appellate review of the
18 claims by the Arledges against Leucadia. Id. at 8.
19 In response, the Arledges argue that the guiding factors
20 considered when determining whether entry of final judgment is
21 appropriate weigh against entry of final judgment. Resp. (doc. 194)
22 at 4. They contend that the claims against Leucadia are "not
23 entirely separate" from those pursued against Finova. Id. In
24 addition, the Arledges assert that review of the adjudicated claims
25 could be mooted by future developments in this case. Id. at 5 ("For
26 instance, if the Court finds Finova did not breach the Loan and
27 Security Agreement, the Defendants' claims against Leucadia would
28 become moot."). Lastly, the Arledges argue that the issues between

them and Leucadia and them and Finova are so related that an appellate court would have to decide many of the same issues twice if there were separate appeals. Id. ("For instance, the breach of contract issue would have to be decided twice if there were separate appeals."). Accordingly, the Arledges contest entry of final judgment. Id.

The Court is not convinced that the claims in the Finova action and the claims against Leucadia are separate and distinct. The Arledges alleged seven counts against Finova in their counterclaim, each related to the Loan Agreement: (1) breach of contract; (2) declaratory judgment; (3) specific performance; (4) fraud; (5) negligent misrepresentation; (6) exemplary damages; and (7) wrongfully seeking temporary injunctive relief, which was awarded to Finova by the court. S. Amend. Counterclaim (doc. 140). As previously discussed, the Arledges brought these same seven claims against Leucadia. Id. at ¶ 83. In addition, the Arledges asserted that Leucadia, through its management of Finova, intentionally and willfully interfered with the business relationship between Finova and the Arledges. F. Amend. Third-Party Complaint (doc. 140). All of these claims involve many of the same facts and arguments. Furthermore, the outcome of the Finova action may affect appellate review of the claims raised by the Arledges against Leucadia. Thus, in light of the fact that the claims raised between all the parties in this case are intricately intertwined, and in the interest of sound judicial administration, the Court concludes that entry of final judgment is inappropriate at this time.

IT IS ORDERED that Third-Party Defendant Leucadia National

1  Corporation's motion for entry of final judgment pursuant to Rule
2  54(b) (doc. 191) is DENIED, without prejudice.
3       DATED this 20th day of October, 2005.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record.